UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHANEL, INC., et al., ) | CASE NO. 5:13-cv-891 |
| ) | |
| ) | |
| PLAINTIFFS, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| JERMAINE WRICE, et al, ) | |
| ) | |
| ) | |
| DEFENDANTS. ) | |

Presently before the Court is the motion of Chanel, Inc. ("Chanel") and Tiffany (NJ), LLC ("Tiffany") (collectively "plaintiffs") for default judgment, statutory damages, and permanent injunction against defendants Jermaine Wrice, aka Jermaine A. Wrice, aka Jermaine "Rico" Wrice (collectively "Wrice"), and Apparel Empire, LLC, dba Apparelempyre.com, dba Apparel Empyre (collectively "Apparel Empire") (collectively "defendants"), pursuant to Fed. R. Civ. P. 55(b)(2), for false designation of origin, and for trademark infringement and counterfeiting, in violation of Sections 43(a) and 32 of the Lanham Act. (Doc. No. 12 (Motion for Default Judgment ["Motion"]), and Doc. No. 12-1 (Memorandum in Support of Motion ["Memorandum"]).)

Defendants have not responded to the motion. The Court has jurisdiction over this case pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338.

For the reasons that follow, plaintiffs' motion is GRANTED.[1]

## I. BACKGROUND

The following factual allegations from the plaintiffs' complaint are deemed admitted due to defendants' default.[2] (Doc. No. 1 (Complaint ["Compl."]).)

Chanel is a New York corporation with its principal place of business in New York, New York. Chanel manufactures and distributes throughout the world, including this judicial district, high quality luxury goods under multiple common law and federally registered trademarks. (Compl., ¶ 2 at 2.) Chanel owns the following United States Federal Trademark Registrations, which are at issue in this case (the "Chanel Marks"): U.S. Registration Nos. 1,501,898; 0,612,169; 0,902,190; 1,510,757; 1,654,252; 1,733,051; 1,734,822; 3,134,695; 3,025,934; and 3,025,936. (Compl., ¶ 8 at 3-4.) The Chanel Marks are registered in International Classes 9, 14, 18, and 28, and are used in connection with manufacture and distribution of, among other things, high quality wallets, sunglasses, and costume jewelry including bracelets, earrings, and necklaces. (*Id.*)

---

[1] The John Doe defendants named in the complaint have not been identified or served. Therefore, the Court's conclusions herein regarding default judgment, statutory damages, and permanent injunction apply only to the Wrice and Apparel Empire defendants. *Sandoval v. Bluegrass Reg'l Mental Health-Mental Retardation Bd.*, No. 99-5018, 2000 WL 1257040, at *5 (6th Cir. July 11, 2000) (without effective service of process the district court lacks jurisdiction to enter default against a defendant pursuant to Fed. R. Civ. P. 55(a)).

[2] Defendants were properly served with a summons and the complaint, but failed to file a responsive pleading, or otherwise defend the lawsuit. (Doc. No. 12-11 (Declaration of Christopher Carney ["Carney Decl."], ¶ 3 at 382-83 (All page number references are to the page identification numbers generated by the Court's electronic filing system.).) Default was entered against defendants, and a copy of the entry was mailed by the Clerk of Court to defendants at their address of record. (Doc. No. 9.) Once a default is entered, the defaulting party is deemed to have admitted all of the well-pleaded allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Tiffany is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Tiffany manufactures and distributes throughout the world, including this judicial district, high quality luxury goods under multiple common law and federally registered trademarks. (Compl., ¶ 3 at 2.) Tiffany owns the following United States Federal Trademark Registrations, which are at issue in this case (the "Tiffany Marks"): U.S. Registration Nos. 0,023,573; 0,133,063; 1,228,189; 1,228,409, 1,669,365; 1,807,381; and 3,433,239. (Compl., ¶ 9 at 4-6.) The Tiffany Marks are registered in International Classes 9 and 14, and are used in connection with manufacture and distribution of, among other things, high quality sunglasses and costume jewelry including bracelets, earrings, and necklaces. (*Id.*)

The Chanel Marks and the Tiffany Marks (collectively, the "Plaintiffs' Respective Marks" or "Respective Marks") have been used in interstate commerce to identify and distinguish plaintiffs' high quality goods for an extended period of time. Plaintiffs' Respective Marks are symbols of plaintiffs' quality, reputation, and goodwill, and have never been abandoned. Plaintiffs have expended substantial time, money and other resources developing, advertising and otherwise promoting their Respective Marks. Plaintiffs' Respective Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1). The plaintiffs have extensively used, advertised and promoted their Respective Marks in the United States in association with the sale of high quality goods, and have carefully monitored and policed the use of their Respective Marks. As a result of the plaintiffs' efforts, members of the consuming public readily identify merchandise bearing the Plaintiffs' Respective Marks, as being high quality merchandise sponsored

and approved by the plaintiffs. Plaintiffs' Respective Marks have achieved secondary meaning as identifiers of high quality goods. (Compl., ¶¶ 10, 12-16 at 6.)

Apparel Empire is an Ohio limited liability company with its principal place of business in Akron and Cuyahoga Falls, Ohio. Wrice is an individual who resides and conducts business in Akron and Cuyahoga Falls, Ohio. Apparel Empire and Jermaine Wrice, jointly and individually, use the aliases "Apparelempyre.com" and "Apparel Empyre" in connection with the operation of their business. The defendants are directly and personally engaging in the sale of counterfeit products that infringe the Plaintiffs' Respective Marks within this judicial district. (Compl., ¶¶ 4-5 at 2.)

Plaintiffs' Respective Marks have never been assigned or licensed to any of the defendants in this matter. Defendants have knowledge of the plaintiffs' ownership of their Respective Marks, including plaintiffs' exclusive right to use and license such intellectual property and the goodwill associated therewith. (Compl., ¶¶ 11, 17 at 6.)

Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit products, including high quality wallets, sunglasses, bracelets, earrings, and necklaces, and other goods bearing trademarks which are exact copies of the Plaintiffs' Respective Marks (the "Counterfeit Goods"). Specifically, the defendants are using the Plaintiffs' Respective Marks in the same stylized fashion, for different and inferior quality goods. Defendants' Counterfeit Goods are of a quality substantially different than that of the plaintiffs' genuine goods. Despite the nature of their Counterfeit Goods, and the knowledge they are without authority to do so, the defendants, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the

4

knowledge that such goods will be mistaken for the genuine high quality products offered for sale by the plaintiffs. The net effect of the defendants' actions will result in the confusion of consumers who will believe that the defendants' Counterfeit Goods are genuine goods originating from and approved by plaintiffs. Defendants import and/or manufacture their Counterfeit Goods and advertise those goods for sale to the consuming public. In advertising the Counterfeit Products, the defendants use Plaintiffs' Respective Marks. Defendants misappropriated the plaintiffs' advertising ideas and entire style of doing business with regard to the advertisement and sale of the plaintiffs' genuine products bearing Plaintiffs' Respective Marks. The misappropriation of the plaintiffs' advertising ideas in the form of the Plaintiffs' Respective Marks has occurred in the course of defendants' advertising activities and has been the proximate cause of damage to the plaintiffs. As a result of defendants' counterfeiting and infringing activities, defendants are defrauding the plaintiffs and the consuming public for defendants' own benefit. (Compl., ¶¶ 18-22 at 7-8.)

The defendants' use of Plaintiffs' Respective Marks, including the importation, promotion and advertising, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without the plaintiffs' consent or authorization. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally, or with reckless disregard or willful blindness to the plaintiffs' rights, for the purpose of trading on the plaintiffs' goodwill and reputation. The defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade. Moreover, the defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the

trade into believing there is a connection or association between plaintiffs' genuine goods and the defendants' Counterfeit Goods. (Compl., ¶¶ 22-24 at 8.)

The complaint alleges that the defendants' actions constitute: (1) trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I) (Compl., ¶¶ 29-34 at 9); (2) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II) (Compl., ¶¶ 36-41 at 10); and (3) irreparable injury to plaintiffs warranting injunctive relief (Compl. ¶¶ 35, 46 at 9, 11.) The plaintiffs' motion seeks statutory damages, and a permanent injunction enjoining defendants from infringing and counterfeiting Plaintiffs' Respective Marks, pursuant to 15 U.S.C. §§ 1116 and 1117.

## II. DISCUSSION

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the clerk against the Wrice and Apparel Empire defendants pursuant to Rule 55(a). (Doc. No. 9.) After default has been entered, the Court may enter default judgment against the defendants with or without a hearing. Fed. R. Civ. P. 55(b). Based on the well-pleaded factual allegations in the complaint, and the declarations submitted by the plaintiffs in support of the motion, the Court concludes that there is a sufficient basis for determining defendants' liability without the need for a hearing. Finally, the plaintiffs have submitted evidence that defendant Wrice is not an infant, an incompetent person, or on active duty in the military or otherwise exempted under the Servicemembers' Civil Relief Act. (Carney Decl., ¶¶ 6-7 at 383.)

Even though the well-pleaded factual allegations of the complaint are accepted as true for purposes of liability, the Court must still determine whether those facts are sufficient to state a claim for relief as to the causes of action for which the plaintiffs seeks default judgment. *J&J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted). Plaintiffs seek default judgment on both counts of the complaint. The undisputed allegations in the complaint establish that defendants Wrice and Apparel Empire violated both 15 U.S.C. § 1114 (trademark infringement and counterfeiting) and 15 U.S.C. § 1125 (false designation of origin) with respect to the Chanel Marks and the Tiffany Marks.

1. *Trademark Infringement and Counterfeiting*

15 U.S.C. § 1114(1)(a) and (b) provides that:

**(1)** Any person who shall, without the consent of the registrant--

> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

7

To establish trademark infringement under 15 U.S.C. § 1114, plaintiffs must show that: (1) they own a valid trademark; (2) defendants used the trademark "in commerce" without plaintiffs' authorization; (3) defendants used Plaintiffs' Respective Marks, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendants' use of the Respective Marks is likely to cause consumer confusion. *The Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114). The "touchstone of liability" for trademark infringement under 15 U.S.C. § 1114 "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Id*. (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

Counterfeiting, under 15 U.S.C. § 1114, is a subset of infringement—even if a mark is infringing, it is not necessarily counterfeit. *Id*. at 910 (citations omitted). "'To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. . . . Section 1116 defines 'counterfeit mark' as 'a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought know such mark was so registered.' 15 U.S.C. § 1116(d)(1)(B)(i). Elsewhere, the statute provides additional clarification, defining 'counterfeit' as 'a spurious mark which is identical with, or

8

substantially indistinguishable from, a registered mark.' 15 U.S.C. § 1127.'" *Id*. at 911 (quoting *Laukus v. Rio Brands, Inc.*, 391 F. App'x, 416, 425 (6th Cir. 2010)).

Based on the allegations in the complaint, which the Court accepts as true, plaintiffs have established the elements required to state a claim for relief for trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114. Plaintiffs own their Respective Marks, and defendants have violated the Lanham Act by producing, advertising, distributing and/or selling products in commerce that bear identical copies of Plaintiffs' Respective Marks without plaintiffs' consent or authorization.[3] By defaulting, defendants have admitted that their use of Plaintiffs' Respective Marks is likely to cause confusion among consumers regarding the origin and quality of the goods offered by defendants.

Accordingly, plaintiffs are entitled to default judgment on Count I of their complaint for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114.

2. *False Designation of Origin*

Under 15 U.S.C. § 1125(a):

**(a)** Civil action

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

---

[3] In addition to the allegations in the complaint admitted by defendants' default, plaintiffs have also submitted declarations establishing that the plaintiffs own their Respective Marks, that defendants are selling counterfeit goods bearing marks that are identical or substantially similar to Plaintiffs' Respective Marks without plaintiffs' consent or authorization, and that the products bearing Plaintiffs' Respective Marks sold by defendants are not genuine Chanel and Tiffany products. (*See* Doc. No. 12-3 (Declaration of Adrienne Hahn Sisbarro ["Hahn Decl."]), ¶¶ 4, 6-11 at 90-94; and Doc. No. 12-4 (Declaration of Steven Costello ["Costello Decl."]), ¶¶ 4, 9-15 at 116-121.)

>misleading description of fact, or false or misleading representation of fact, which--
>
>>**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>>**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Under the Lanham Act, the same test is used for trademark infringement and false designation of origin: likelihood of confusion. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)). Based on the undisputed allegations in plaintiffs' complaint, the defendants are liable for false designation of origin. Defendants have used identical copies of Plaintiffs' Respective Marks in producing, advertising, distributing and selling defendants' products, and have done so without plaintiffs' consent or authorization. Defendants' goods are likely to be mistaken for the genuine products offered for sale by the plaintiffs, and to result in the confusion of consumers, who will believe that defendants' Counterfeit Goods are genuine goods originating from and approved by plaintiffs.

Accordingly, plaintiffs are entitled to default judgment on Count II of their complaint for false designation of origin in violation of 15 U.S.C. § 1125.

3. *Statutory Damages*

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co.*, 441 F. Supp. 2d at 846 (citing *Visioneering Constr.*, 661 F.2d at 124). "[W]here the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *J&J Sports Prods., Inc. v. Rodriguez*, 2008 WL 5083149, at *1 (citing Fed. R. Civ. P. 55(b)). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009)).

The Court may rely on affidavits submitted by plaintiffs in support of damages without the need for a hearing. *Id*. at *2 (citation omitted). In this case, reliance on plaintiffs' declarations in lieu of an evidentiary hearing is appropriate for at least two reasons. First, plaintiffs seek statutory, rather than actual, damages, and there is a basis for an award of statutory damages in this case. Second, defendants have been served with plaintiffs' complaint, the Court's entry of default, and plaintiffs' motion at their address of record, but have failed to appear or otherwise defend this action, and thus would likely not participate in an evidentiary hearing if it occurred. *See id.*

Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117 instead of actual damages, and statutory damages "are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (collecting cases)). Section 1117(c) permits statutory damages of not less than

11

$1,000, or more than $200,000, per counterfeit mark per type of goods sold, offered for sale, or distributed:

> * * * *
>
> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>
>> **(1)** not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>>
>> **(2)** if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

The undisputed record reflects that the Chanel Marks and the Tiffany Marks used by defendants are counterfeit marks as defined by 15 U.S.C. § 1116(d), and that the defendants used those counterfeit marks on goods for which Plaintiffs' Respective Marks are registered. Further, if the defendants have knowledge that their action infringe Plaintiffs' Respective Marks, their infringement is willful and 15 U.S.C. § 1117(c)(2) provides for enhanced statutory damages.

"A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness." *Microsoft Corp.,* 490 F. Supp. 2d at 880 (citing *Ford Motor Co.*, 441 F. Supp. 2d at 852). "In addition, a court may infer willfulness from defendant's default." *Microsoft Corp.,* 490 F. Supp. 2d at 880 (citations omitted); *Tiffany*

*(NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [defendant's] infringement is deemed willful[.]").

In this case, the Court concludes that defendants' infringement and counterfeiting of Plaintiffs' Respective Marks was willful. Defendants' willfulness is not only established by their defaults, but by their continued violations of the Lanham Act even after notice that their actions infringed the Chanel Marks and the Tiffany Marks.[4]

Chanel seeks statutory damages in the amount of $141,588.00, and Tiffany seeks statutory damages in the amount of $154,500.00. The Court has broad discretion in awarding statutory damages within the limits established by Congress "as the court considers just." *Ford Motor Co.*, 441 F. Supp. 2d at 852 (citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990)); 15 U.S.C. § 1117(c)(1).

a. Chanel's damages analysis

At defendants' place of business, plaintiffs' investigator inventoried a total of 114 sunglasses, wallets, earrings, bracelets and necklaces bearing the Chanel Marks in violation of the Lanham Act. (Forder Decl., ¶ 6 at 133-34.) However, plaintiffs are not seeking damages in connection with counterfeit wallets because plaintiffs' investigator was unable to obtain photographs of defendants' counterfeit wallets. (Memorandum at

---

[4] Even after being served with the summons and complaint, and receiving the Clerk's entry of default, defendants continued to infringe the Chanel Marks, and use Chanel's "famous CC Monogram" in an offensive and vulgar manner. (Doc. No. 12-10 (Declaration of Stephen M. Gaffigan ["Gaffigan Decl."]), ¶ 3 at 300.) Further, plaintiffs' investigator spoke with Jermaine Wrice by telephone, "who provided [the investigator] with numerous different accounts of how and where he obtained his trademarked products." (Doc. No. 12-5 (Declaration of Kevin Forder ["Forder Decl."], ¶ 6 at 133-34.) Wrice agreed that the investigator could inventory the trademarked products, and although he would not surrender the counterfeit products, he authorized his employee to remove certain products bearing the Tiffany Marks but refused to authorize removal of the Chanel branded products. *Id*. A subsequent visit by plaintiffs' investigator to defendants' place of business revealed that the Tiffany branded products previously removed had been returned to the display area, and that the defendants continued to sell and offer for sale Counterfeit Goods bearing Plaintiffs' Respective Marks. Defendants' website also continued to sell and offer for sale Counterfeit Goods bearing the Chanel Marks and the Tiffany Marks. (Forder Decl., ¶¶ 7-11 at 134-36.)

62, n. 1.) Chanel seeks $5,056.71 in damages for each of the seven (7) Chanel Marks infringed and counterfeited that are registered for sunglasses, earrings, necklaces and bracelets, multiplied by four (4) for the number of types of infringing and counterfeit goods sold (sunglasses, earrings, necklaces, and bracelets), for a total statutory damages award of $141,588.00.[5]

Chanel's requested statutory damages are well below the maximum that Chanel could recover under the statute, even without a showing of willfulness. Given the Court's conclusion that the defendants' infringing and counterfeiting conduct was willful, the statute permits a recovery of up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. For these reasons, the Court concludes that Chanel's requested statutory damage award of $5,056.71 per counterfeit mark per type of counterfeit product, for a total award of $141,588.00, is just.

Accordingly, the Court awards statutory damages to Chanel in the amount of $141,588.00 against defendants, jointly and severally, for defendants' liability under Counts I and II of plaintiffs' complaint. (*See* Memorandum at 82 (The scope of monetary damages for false designation of origin (Count II) is encompassed by the statutory award under 15 U.S.C. § 1117.).)

  b. Tiffany's damages analysis

At defendants' place of business, plaintiff's investigator inventoried a total of 103 sunglasses, earrings, necklaces and bracelets bearing the Tiffany Marks in violation of the Lanham Act. (Forder Decl., ¶ 6 at 133-34.) Tiffany seeks $5,517.86 in damages for each of the seven (7) Tiffany Marks registered for sunglasses, earrings,

---

[5] *See* Memorandum at 64-65 for the details of Chanel's statutory damages calculation.

necklaces and bracelets infringed and counterfeited, multiplied by four (4) for the number of types of infringing and counterfeit goods sold (sunglasses, earrings, necklaces, and bracelets), for a total statutory damages award of $154,500.00.[6]

Tiffany's requested statutory damages are well below the maximum that Tiffany could recover under the statute even without a showing of willfulness. For the same reasons as above, the Court concludes that Tiffany's requested statutory damage award of $5,517.86 per counterfeit mark per type of counterfeit product, for a total award of $154,500.00, is just.

Accordingly, the Court awards statutory damages to Tiffany in the amount of $154,500.00 against defendants, jointly and severally, for defendants' liability under Counts I and II of plaintiffs' complaint.

**B.  Injunctive Relief**

In addition to statutory damages, the Lanham Act authorizes a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a); *Ford Motor Co.*, 441 F. Supp. 2d at 852 (citing 15 U.S.C. §§ 1116, 1125(c)(2)).

To obtain a permanent injunction, plaintiffs must show that: (1) they have suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiffs and defendants weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG*, 469 F. 3d at 550 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). The decision whether to grant a permanent

---

[6] *See* Memorandum at 65-66 for the details of Tiffany's statutory damages calculation.

injunction lies within the Court's discretion. *eBay Inc.,* 547 U.S. at 391; *List v. Ohio Elections Comm'n*, Case No. 1:10-cv-720, --F. Supp. 3d--, 2014 WL 4472634, at *5 (S.D. Ohio Sept. 11, 2014) (citations omitted). An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute. *Chanel v. Cong*, No. 10-2086, 2011 WL 6180029, at *9 (W.D. Tenn. Dec. 8, 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005)).

In this case, defendants' liability has been established. The defendants have infringed and counterfeited Plaintiffs' Respective Marks at both their physical and on-line business locations even when defendants were on notice of their unlawful conduct.

In addition to the monetary loss to plaintiffs resulting from the sale of counterfeit products, defendants' Counterfeit Goods are substantially inferior to plaintiffs' high quality genuine goods, and consumer confusion regarding the origin defendants' counterfeit products causes irreparable damage to the goodwill and reputation of quality associated with Plaintiffs' Respective Marks.[7] *See Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (irreparable injury that cannot be remedied by money damages follows from the likelihood of consumer confusion and risk to plaintiffs' reputation (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F. 2d 595, 608 (6th Cir. 1991))).

---

[7] *See* Compl., ¶¶ 24-26 at 8; Hahn Decl., ¶¶ 6-12 at 91-94; Costello Decl., ¶¶ 6-16 at 117-121; Forder Decl., ¶¶ 6-9 at 133-35. In addition, defendants' use of the Chanel Marks in an offensive and vulgar manner enhances the irreparable harm to Chanel. (*See* Gaffigan Decl., ¶ 3 at 300.)

It is in the public interest to enforce federal trademark laws and to prevent consumers from being misled regarding the origin of products bearing Plaintiffs' Respective Marks. The defendants face no hardship as a consequence from being enjoined from violating the Lanham Act. Plaintiffs, on the other hand, will continue to suffer from lost income and damage to the reputation and goodwill of their Respective Marks if defendants are not permanently enjoined from their illegal conduct.

The Court concludes that the balance of these considerations weighs in favor of granting a permanent injunction, and injunctive relief is appropriate to prevent the defendants from infringing and counterfeiting Plaintiffs' Respective Marks. *See Audi AG v. D'Amato*, 469 F. 3d at 550.

Accordingly, the Wrice defendants and the Apparel Empire defendants, and their respective officers, agents, servants, employees and attorneys, and persons acting in concert or participation with them who receive actual notice of such order or injunction by personal service or otherwise, are permanently restrained and enjoined from engaging in any of the following acts or omissions:

(a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the "Chanel Marks": U.S. Registration Nos. 1,501,898; 0,612,169; 0,902,190; 1,510,757; 1,654,252; 1,733,051; 1,734,822; 3,134,695; 3,025,934; and 3,025,936, and/or the "Tiffany Marks": U.S. Registration Nos. 0,023,573; 0,133,063; 1,228,189; 1,228,409, 1,669,365; 1,807,381; and 3,433,239;

(b) using the Tiffany and/or Chanel Marks in connection with the sale of any unauthorized goods;

(c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of defendants offered for sale or sold by the defendants, individually or via any associated business, as being sponsored by, authorized by, endorsed by, or in any way associated with plaintiffs;

(d) falsely representing themselves as being connected with plaintiffs, through sponsorship or association;

(e) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants offered for sale or sold by the defendants, individually or via any associated business, are in any way endorsed by, approved by, and/or associated with plaintiffs;

(f) using any reproduction, counterfeit, copy, or colorable imitation of the Plaintiffs' Respective Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by defendants, individually or via any business associated with the Defendants, including, without limitation, wallets, sunglasses, and costume jewelry, including bracelets, earrings, and necklaces;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by defendants, individually or via any associated business, as being those of plaintiffs or in any way endorsed by plaintiffs;

(h) otherwise unfairly competing with plaintiffs; and

(i) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

### III. CONCLUSION

For the reasons contained herein, plaintiffs' motion for default judgment as to Counts I and II of the complaint is GRANTED. The Court awards statutory damages in the amount of $141,588.00 to Chanel, and in the amount of $154,500.00 to Tiffany, against the Wrice defendants and the Apparel Empire defendants, jointly and severally, along with pre-judgment and post-judgment interest as allowed by law.

Further, defendants are permanently restrained and enjoined from infringing Plaintiffs' Respective Marks, as outlined above.

A Judgment Entry will be separately published.

**IT IS SO ORDERED**.

Dated: February 9, 2015

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**